## In re BLACK.

(Supreme Court, Appellate Division, Second Department.   May 26, 1910.)

1. INJUNCTION (§ 223*)—VIOLATION—"CONTEMPT."

A person against whom supplementary proceedings were instituted was ordered not to make any disposition of any of his property or in which he had any interest, except property exempt by law, or to interfere therewith until further orders.   When the order was served, he was in the employ of a company, and had been so employed for about two months. After the service of the order, he received from the company his share in the profits from certain transactions which occurred prior to the granting of the order, and the money so received he transferred to his wife under a prior assignment to her of everything that he was to earn or which came to him until her indebtedness was paid.   *Held*, that the assignment, being of a fund not then in existence, gave the wife only an equitable lien upon the property, and that the legal title remained in the husband, and that the transfer of the money was a violation of the injunction, constituting a contempt under Code Civ. Proc. § 14.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. § 223.*

For other definitions, see Words and Phrases, 'vol. 2, pp. 1489–1492; vol. 8, p. 7614.]

2. ASSIGNMENTS (§ 4*)—VALIDITY.

An assignment of something which has no present or even potential existence does not transfer the legal title when it does come into existence; but such an assignment, if made in good faith and for a valuable consideration, is not void as against public policy, but operates as an executory contract to transfer such after-acquired property and creates an equitable lien thereon, and the title is not transferred until either the equitable lien is enforced, or there is some new act by which the assignor puts the assignee in possession thereof.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 6; Dec. Dig. § 4.*]

Appeal from Special Term, Westchester County.

In the matter of the application of William Harman Black to examine in proceedings supplementary to execution Daniel J. Sulley. Appeal by plaintiff from an order of the Special Term denying his motion to punish defendant for contempt.   Reversed, and motion to punish for contempt granted.

Argued before WOODWARD, JENKS, BURR, THOMAS, and CARR, JJ.

Edward M. Grout (Frank R. Greene, on the brief), for appellant.

Walter C. Booth (Frederick P. King, on the brief), for respondent.

BURR, J.   On November 17, 1908, defendant was served with an order requiring him to attend on November 21st before a justice of the Supreme Court, and be examined in proceedings supplementary to execution.   The order forbade him "to transfer or make any disposition of any property belonging to him or in which he has any interest (except property exempt by law), or in any manner to interfere therewith, until further order in the premises."   He failed to appear for examination, but by stipulation the default was waived, and he was examined on the 12th day of June, 1909, and again on the 25th of

the same month. Thereafter a motion was made to punish him for contempt for violating the injunction order, and from the order denying such motion this appeal is taken.

When the order was served, defendant was employed by Hayden, Stone & Co. This employment began September 15, 1908. In the first instance it was agreed that he should receive as compensation for his services commissions amounting to one-third of the profits resulting to Hayden, Stone & Co. from the business in "cotton futures" obtained for them by him. About the middle of October, 1908, the agreement was modified, so that said firm were to pay him a salary at the rate of $400 per month from September 15th, and, in addition thereto, he was to be permitted to "draw up all there was in the past." In pursuance of this modified agreement, he received $400 on November 18th, $400 on December 1st, and $3,800 on December 17th of the same year, all of which he immediately paid over to his wife at a time when the injunction order was in full force and effect. If we deduct from the $4,600 which he received the sum of $400 for salary claimed to be due October 15th and the further sum of $400 for salary on November 15th and the sum of $400 for salary on December 15th, it is clear that he received at least the sum of $3,400 for commissions on sales. This must have been earned by him before October 15, 1908, when the new arrangement as to salary went into effect, and was therefore a debt owing to him when the injunction order was made. The excuse which defendant gave while under examination and on the motion to punish him for contempt for paying over this money in apparent violation of the provisions of the injunction order was that in February or March, 1907, he executed an assignment to his wife which he described as an assignment of "everything that I was to earn or came to me until her indebtedness was paid." If the language here employed were strictly construed, the period covered by the assignment would seem to be limited by the existence of some indebtedness which defendant's wife had incurred, and not by any indebtedness of him to her. Subsequently, however, in response to a leading question by his counsel, he testified that he turned the money over to his wife on account of his indebtedness to her. The assignment, if in writing, was not produced, no evidence of its existence other than the statement of the defendant himself was presented, and no information was given as to the amount or source of the alleged indebtedness from him to his wife.

If we should concede, as claimed by respondent, that, no matter how fraudulent or colorable a transfer may appear, the legal title to the fund or property in dispute cannot be tried in a proceeding to punish for contempt (Matter of Duryea, 17 App. Div. 540, 45 N. Y. Supp. 703; Holmes v. O'Regan, 68 App. Div. 318, 74 N. Y. Supp. 10), we think that this rule is not applicable here. At the time when defendant paid over this money to his wife the legal title to the same was in him and his wife, at the most, only had an equitable lien upon it. When the alleged assignment was made, not only was the fund afterwards transferred not in existence, but the contract out of which the fund arose had not been made, nor, so far as it appears, was it even

in the contemplation of any of the parties thereto. An assignment of something which has no present, actual, or even potential existence when the assignment is made does not operate to transfer the legal title to that thing when it does come into existence. Field v. The Mayor, 6 N. Y. 186, 57 Am. Dec. 435; McCaffrey v. Woodin, 65 N. Y. 459, 22 Am. Rep. 644. Such an instrument, if made in good faith for a valuable consideration and not void as against public policy, operates as an executory contract to transfer such after-acquired property, and creates an equitable lien thereon. McCaffrey v. Woodin, supra; Wisner v. Ocumpaugh, 71 N. Y. 113; Coats v. Donnell, 94 N. Y. 168; Kribbs v. Alford, 120 N. Y. 519, 24 N. E. 811; Cooper v. Douglass, 44 Barb. 409. But the legal title remains in the assignor. Hovey v. Elliott, 118 N. Y. 124, 136, 23 N. E. 475. And at law that title is not transferred until either the equitable lien is enforced by judicial decree, or some new act intervenes by which the assignor puts the assignee in possession thereof. McCaffrey v. Woodin, supra, 65 N. Y. 463, 464, 22 Am. Rep. 644. But this "new intervening act" was one of the things which the judgment debtor was expressly forbidden to do, and his violation of the injunction order in this respect clearly constituted a civil contempt. Code Civ. Proc. § 14. When the legal title to property is in a judgment debtor, he has no right to violate a positive order of the court and turn it over in settlement of an equitable claim or lien, no matter how meritorious that claim may be, until appropriate proceedings have been taken to establish such claim. People v. Kingsland, *42 N. Y. 325; Jackson v. Murray, 25 App. Div. 140, 49 N. Y. Supp. 195. Matter of Duryea, supra, Holmes v. O'Regan, supra, and Rhodes v. Linderman, 63 Hun, 626, 17 N. Y. Supp. 628, cited by the learned trial justice in his opinion, are not applicable to the case at bar, for in each instance the claim or chose in action was actually in existence when the assignment was made and constituted the subject matter thereof, although the proceeds of the claim were subsequently received.

The order appealed from should be reversed, with $10 costs and disbursements, and the motion to punish for contempt should be granted, with $10 costs, and the proceeding should be remitted to the Special Term to fix the appropriate punishment therefor. All concur.